## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHELIA GRIFFIN | : | CIVIL ACTION |
| 705 Morgantown Road | : | |
| Honey Brook, PA 19344 | : | |
| | : | |
| Plaintiff, | : | NO: |
| | : | |
| vs. | : | *Electronically filed* |
| | : | |
| AMERICAN UNITED LIFE | : | |
| INSURANCE COMPANY d/b/a | : | |
| OneAMERICA® | : | |
| 1 American Square | : | |
| Indianapolis, IN 46282 | : | |
| | : | |
| Defendant, | : | JURY TRIAL DEMANDED |
| | : | |
| SANDERS SAWS AND BLADES, | : | |
|  INC. | : | |
| 2470 Conestoga Avenue | : | |
| Honey Brook, PA 19344 | : | |
| | : | |
| Defendant, | : | |
| | : | |
| JOSEPH CAMMEROTA | : | |
| 2470 Conestoga Avenue | : | |
| Honey Brook, PA 19344 | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

## JURISDICTION

1.     This Court has jurisdiction over this case in light of Plaintiff's cause

of action under The Employee Retirement Income Security Act of 1974 (ERISA)

(Pub.L. 93–406, 88 Stat. 829, enacted September 2, 1974, codified in part at 29 U.S.C. ch. 18) and in particular ERISA Section 502 (a)(3), 29. U.S.C. section 1132(a)(3). Plaintiff's state law claims are properly before the Court because of supplemental jurisdiction.

2.      Venue is proper in the Eastern District of Pennsylvania because Defendant Sanders Saw and Blades, Inc. is located in this District and Plaintiff worked at Defendant and lives in this District, and all or most of the factual circumstances in this Complaint occurred in this District.

## FACTUAL ALLEGATIONS

3.      Plaintiff is Shelia Griffin who lives at 705 Morgantown Road, Honey Brook, PA 19344 and is a resident of Chester County.

4.      Defendant is American United Life Insurance Company d/b/a OneAmerica® (hereafter "Defendant AUL") whose corporate headquarters has an address of 1 American Square, Indianapolis, IN 46282 and whose registered address for service is Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN 26204.

5.      Defendant is Sanders Saws and Blades, Inc.  and Defendant's business address is 2470 Conestoga Avenue, Honey Brook, PA 19344.

6.    Defendant is Joseph Cammerota, the Plant Manager at Sanders Saws and Blades, Inc., whose address is 2470 Conestoga Avenue, Honey Brook, PA 19344.

7.    Defendant Sanders Saws and Blades, Inc., as part of its benefit package offered to employees a voluntary Life Insurance Coverage through Defendant AUL.

8.    Defendant AUL offered life insurance coverage to Plaintiff Shelia Griffin through her work at Defendant Sanders Saws and Blades, Inc. for herself and her spouse, Vernon Griffin.

9.    Defendant Cammerota is the Plant Manager where Plaintiff worked and at all relevant times acted for Defendant Sanders Saws and Blades, Inc. and the later is vicariously liable or liable under the doctrine of respondeat superior for his actions.

10.    To the extent Defendant Cammerota acted beyond the scope of his authority, Defendant Sanders Saws and Blades, Inc. has ratified his actions by the conduct of its agents.

11.    Plaintiff has made claim for the coverage after her husband has died.

12.    Defendant AUL has denied coverage.

13.    Based on the representations of the legal counsel representing Defendant AUL and Defendant Sanders Saws and Blades, Inc., it is not clear

whether this coverage was provided as an ERISA qualified plan (Defendant AUL's claim) or was not part of an ERISA qualified plan, which would mean state law applies. (Defendant Sanders Saws and Blades, Inc.'s claim)

14.    Assuming this is a policy/plan that falls within ERISA's safe harbor, actions in this suit against Defendant AUL is under Pennsylvania's statutory and common law as more fully indicated herein.

15.    Under Pennsylvania Insurance law, it violates the law for an insurance company not to pay life insurance policy proceeds after the passage of the two-year incontestability.

16.    Plaintiff also has causes of actions against Defendants Sanders Saws and Blades, Inc. and Sanders Saw Plant Manager Joseph Cammerota under ERISA or alternatively under Pennsylvania statutory and common law.

17.    Assuming that ERISA does apply, the present action would be under ERISA against Defendant Sanders Saws and Blades, Inc. and Defendant Cammerota for breach of fiduciary duty involving the Life Insurance coverage for which Plaintiff enrolled on her now deceased husband Vernon coverage through her employment with Sanders Saws and Blades, Inc., using AUL as the provider of the coverage.

18.     Assuming that ERISA does not apply, the other actions are Pennsylvania statutory actions and common law actions against Defendant Sanders Saws and Blades, Inc. and Defendant Cammerota as indicated more fully herein.

19.     Plaintiff paid through deductions from her paycheck for AUL Policy number is G 2535(T) B and the Participating Unit Number is G 00619052-000-000.

20.     It is believed and therefore averred that the Policy amount is $50,000 for Ms. Griffin and half of that amount for her husband, although said amounts will be determined by discovery.

21.     Plaintiff Shelia Griffin turned 62 on July 29, 2018.

22.     On July 2, 2018, Plaintiff put her notice in that she was retiring from full time work effective 8/31/2018.

23.     Plaintiff continued to work part time.

24.     Starting the week of 9/2/2018 through 9/8/2018, Plaintiff became part-time working hours that fluctuated, but she was to work 3 days a week, 8 hours day. However, her actual time varied 48-64 hours in a bi-weekly pay period, with her usual hours being below 30 hours a week.

25.     Plaintiff never received a copy of the Policy and was never told that to apply for coverage that an employee had to work 30 hours a week.

26.     The enrollment or promotion paperwork provided by Defendant AUL, which was distributed on information and belief from the Blue Marsh agency or Defendant Sanders Saws and Blades, Inc., never indicated an employee had to be 30 hours a week to get coverage.

27.     Under the Life Insurance Policy/Plan, the initial enrollment period for present employees was between 7/1/2019 and 7/31/2019.

28.     During the initial enrollment period, there was a meeting with all employees, including Plaintiff who was part-time, and Plant Manager Joseph Cammerota who ran the meeting and answered questions.

29.     Plant Manager Joseph Cammerota said all employees had to agree on taking the Plan or we would not go forward with it.

30.     Plaintiff then asked whether she would be eligible to participate as she was part-time.

31.     Plant Manager Joseph Cammerota specifically answered "yes."

32.     Plaintiff enrolled and got a Life Insurance policy on her husband.

33.     Plaintiff believes she got $50,000 of coverage on herself and $25,000 on her spouse, Vernon Griffin.

34.     On information and belief, the premiums for her husband's Policy/Plan was fully paid for by herself and there were no contributions from the Employer.

35.    At all relevant times to this lawsuit, at the time of enrollment to the time she made a claim under the Plan/Policy for her husband's death, she was never told the plan was limited to employees who worked at least 30 hours nor was she given any promotional material, policy, Plan material, or other document that indicated that the policy was limited to those who worked 30 hours.

36.    Based on the information she was told and supplied at enrollment, Plaintiff reasonably thought that she was eligible to purchase Life Insurance on her husband even though she was working after retirement in the main 20-30 hours a week with a short absence because of Covid-19.

37.    Plaintiff's insurance deductions started 7/21/2019.

38.    A paystub dated 7/21/2019 through 8/3/2019 shows the first insurance deduction, a miscellaneous deduction, which is for the insurance premiums.

39.    The previous paystub dated 7/7/2019 through 7/20/2019 does not have this deduction.

40.    Plaintiff's husband Vernon Griffin passed on February 21, 2022.

41.    Defendant AUL had more than two years to investigate Plaintiff's employment status before a claim was made, including but not limited to during the enrollment period.

42.    Plaintiff made a timely claim and submitted the appropriate claim information to Defendant AUL to perfect her application for Mr. Griffin's death benefit.

43.    More than two years passed between Plaintiff's enrollment for the Life Insurance Benefit and her claim for her husband's death.

44.    The AUL Claim that was submitted by Defendant Sanders Saws and Blades, Inc. and Defendant Cammerota has a spot to be filled out only by the Employer, Section IV, where there is a box to check whether this is an ERISA Plan or not, and the box is checked "no."

45.    Plaintiff asserts the boxed was checked by Defendant Cammerota or one of Defendant Sanders Saws and Blades. Inc.'s representatives.

46.    Alternatively, Plaintiff asserts the boxed was pre-checked by one of Defendant AUL's representatives or agents.

47.    On March 21, 2022, Defendant AUL denied coverage on this claim sent by a claims adjuster on the basis Plaintiff was not eligible for benefits.

48.    Defendant AUL indicated in its March 21st letter that the following information was obtained:

- Group Life Form completed by Sanders Saws and Blades, Inc. on March 18, 2022
- Conversation with Sanders and Blades Inc.'s representative on March 22, 2022
- Our Americas Covid-19 guidelines.

49.    Defendant AUL indicates coverage was denied based on the application of the Covid-19 guidelines which allowed employees to temporarily decrease their hours below the 30 hour minimum.

50.    Defendant AUL claimed in the denial letter as follows:

> According to Group Claim From and the conversation with Sanders Saws and Blades Inc. you voluntarily reduced your weekly work hours on April 3, 2020 below the required minimum hours per week required by the policy.

51.    This information was not true.

52.    Defendant AUL misrepresented either whether such a conversation occurred or the nature of the conversation with Sanders Saw and Blades, Inc. to hide the fact that Plaintiff was part time when she was enrolled in the AUL policy/plan.

53.    Defendant AUL markets its policies to small companies or those groups with not many employees knowing that part time employees will need to be enrolled due to eligibility and/or underwriting issues and intending to deny coverage in those claims.

54.    Defendant AUL engages in insurance bad faith in its marketing, underwriting, or claims practices in its enrollment of part time employees, not providing sufficient information to customers and applicants for insurance to

determine enrollment requirements and not explaining the difference between an

ERISA plan and insurance coverage.

55.    Alternatively, Defendant Sanders Saw and Blades, Inc. was provided

such accurate information on enrollment requirements and Defendant Sanders

Saws and Blades, Inc., by and through Defendant Cammerota or another employee,

agent, or representative, misrepresented to Plaintiff eligibility for benefits and later

made misrepresentations to Defendant AUL.

56.    Plaintiff at no time was asked by Defendant AUL or its agents the

number of hours she was working nor did Defendant AUL inquire of Plaintiff's

hours or her co-workers hours from her employer.

57.    Pennsylvania law at 40 P.S. section 574 states as follows in relevant

part:

> No policy of industrial insurance shall be delivered in this
> Commonwealth, unless the same shall contain in substance the following
> provisions:
>
>       *                    *                    *
>
>  (c)  A provision that the policy shall be incontestable after it has been in
> force, during the life-time of the insured, two years from its date of issue,
> except for nonpayment of premium, and that, at the option of the
> company, provisions relating to disability benefits and those granting
> additional insurance specifically against death by accident or accidental
> means may also be excepted.

58.     Defendant AUL, assuming this is a non-ERISA plan, violated Pennsylvania Insurance law 40 P.S. section 574(c) by denying Vernon's life insurance claim because the two-year incontestability period was complete and Defendant AUL had no right to contest or deny the claim.

59.     Defendant AUL is engaging in breach of contract, insurance bad faith under Section 8371, violation of the covenant of good faith and fair dealing, fraud, and violation of the Unfair Trade Practices and Consumer Protection Law.

60.     Alternatively, Defendants Sanders Saws and Blades, Inc.  and Sanders Saw Plant Manager Joseph Cammerota are liable for Plaintiff.

61.     Plaintiff when she was enrolled was working part time, working no more than 30 hours as she had officially "retired" from full time work as of 8/31/2018.

62.     Any claim by Sanders and Blades Inc.'s representative on March 22, 2022 that Plaintiff's hours were reduced below 30 hours because of Covid-19 is false.

63.     On April 14, 2022, Plaintiff's daughter Jody Thompson contacted Sanders Saw Plant Manager Joseph Cammerota.

64.     Ms. Thompson told Mr. Cammerota that the insurance company adjuster informed the claim was being denied and had directed Ms. Thompson go

to Mr. Cammerota since the policy clearly stated an employee must be full time working 30 hours a week to be eligible for the policy.

65.    Defendant Cammerota said the company lawyer would be looking into it after contacting the insurance broker they used to get the policy.

66.    Defendant Cammerota said he did not have a copy of the policy and didn't know about the qualification of 30 hours until after the insurance denied the claim.

67.    Ms. Thompson told Defendant Cammerota that the denial letter claimed, inaccurately, that her mother was full time and had reduced her hours because of COVID.

68.    Defendant Cammerota responded by saying he thought that would be a way around it since her hours were reduced with the layoff she had at that time.

69.    Defendant Cammerota was told this was not true, she did have a week layoff but her hours before that were still not 30, they were under 30.

70.    Defendant Cammerota assured Ms. Thompson the company lawyer was working on it.

71.    Ms. Thompson told him that they would probably be getting a lawyer themselves since the insurance company didn't seem like they were going to budge saying it was the company's fault for giving the policy to begin with.

72.    Ms. Thompson then told Defendant Cammerota that her mom asked

from the beginning when the policy was presented to the whole company at a

meeting if it pertained to her since she was part time and he told her yes.

73.    She added that her mother shouldn't be out the money because of

someone else's mistake.

74.    Defendant Cammerota then became upset and his tone changed saying

her mother reduced her hours on her own when her husband became more sick.

75.    Ms. Thompson acknowledged this is true, but that Ms. Griffin went

from working three 8-hour days a week to working five 4-hour days a week, and

indicated to Defendant Cammerota that his claim didn't matter because that change

was from 24 hours a week to 20.

76.    Ms. Thompson concluded that the policy required her to work 30

which weren't her hours since the policy started.

77.    Defendant Cammerota said again that he would have the lawyer get

back to her and he was working with the broker to help her mother; it would just

take a little time.

78.    Plaintiff has had additional conversations with Defendant Cammerota

in person while at work.

79.    The first conversation was after she received the initial denial letter.

80.    Defendant Cammerota told Ms. Griffin that he was working with the broker since they had all the paperwork and the policy on file.

81.    Defendant Cammerota told Plaintiff that he could get them to return all her premium payments to her, which she told him she would not accept since she should get the whole policy amount.

82.    Plaintiff spoke with Defendant Cammerota again after the insurance company sent a check for the insurance premiums telling him she would not cash it.

83.    Defendant Cammerota said he would have the company lawyer call her that day after her work hours.

84.    When Plaintiff got home that day there was a message on her machine from the lawyer's assistant, 'Joe', saying they were just getting back to her but didn't leave a number.

85.    After trying to figure out who the company's lawyer was on their own since the assistant only shared his first name, Plaintiff and Ms. Thompson were able to contact the company's lawyer, Rory O. Connaughton, on May 12, 2022.

86.    Attorney Connaughton said he had multiple policies in front of him and would need to call Plaintiff and Ms. Thompson.

87.    The next day Plaintiff and Ms. Thompson spoke with him again.

88.     Attorney Connaughton told Plaintiff and Ms. Thompson that everything they stated about Plaintiff not ever seeing the policy agreement and her never knowing that she shouldn't have the policy seemed accurate and further indicated that the only thing he figured was maybe the insurance broker misrepresented the policy to Sanders Saws and would be contacting them.

89.     Plaintiff spoke with Defendant Cammerota at work one more time after not hearing back from Rory and receiving a letter from the insurance company as to why the insurance check wasn't cashed yet.

90.     Defendant Cammerota said that Attorney Connaughton had been out for medical reasons and thought someone else might have been taking over for him.

91.     Defendant Cammerota said Attorney Connaughton was supposed to get back to her, but he never did.

92.     The Life Insurance group benefit at issue in this case is an ERISA plan not subject to the exceptions provided by current statutory law as interpreted by relevant case law and federal regulation, known as the "safe harbor" provision.

93.     Plaintiff has sought repeatedly through counsel she engaged relevant information from the Employer as to whether the Life Insurance coverage at issue falls into the rather limited ERISA exceptions that comprise the "safe harbor" provision.

94.     Defendant Sanders Saws and Blades, Inc., has eventually taken the position that the ERISA safe harbor applies and thus this is not an ERISA qualified plan.

95.     Via correspondence dated March 1, 2023, Attorney Connaughton stated that in Defendant Sanders Saws and Blades, Inc.'s view, this policy is not an ERISA plan and referred Plaintiff to Defendant AUL for relief.

96.     On or about March 15, 2023, Plaintiff was provided by Defendant AUL's counsel documentation that shows that on or about June 21, 2019, Defendant Cammerota during the enrollment period appears to have submitted an AUL form entitled "Administration Options Election Form for Group Insurance Policy Holders" which affirmed that the company's Plan is governed by ERISA by selection of the ERISA box.

97.     There is an agency relationship between Attorney Connaughton's law firm, Brubaker, Connaughton, Goss & Lucarelli, LLC, and Defendant Sanders Saws and Blades, Inc.

98.     Defendant Sanders Saws and Blades, Inc. has ratified any unauthorized actions by Defendant Cammerota.

99.     ERISA imposes a duty on plan fiduciaries to act in accordance with Section 404(a), 29 U.S.C. section 1104(a).

100.    ERISA imposes a duty on plan fiduciaries to act "solely in the interest of the participants and beneficiaries" and "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

101.    ERISA states that a person is a fiduciary with respect to a plan only to the extent that he exercises discretionary control, discretionary authority, or discretionary responsibility in the management or administration of the plan. 29 U.S.C. § 1002(21)(A).

102.    Defendants Sanders Saw and Blades and Defendant Cammerota owed a duty to act "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

103.    Defendants had to act in accordance with the "prudent man" standard.

104.    Defendants did not act prudently by allowing Plaintiff to enroll in this Plan and by having or allowing its representative explaining the Plan to misrepresent the eligibility requirements of the Plan.

105.   Defendants did not act prudently by the other conduct in this case which was contrived to deceive Plaintiff into pursuing an action against Defendant AUL alone.

106.   Plaintiff brings a claim in the alternative for breach of fiduciary duty against Defendant Sanders Saw and Defendant Cammerota under ERISA Section 502(a)(3), 29 U.S.C. section 1132(a)(3).

107.   This claim is brought pursuant to ERISAs for breach of a statutory right to fiduciary duty and thus Plan exhaustion is not required.

108.   If this is an ERISA plan, Plaintiff is without recourse against Defendant AUL because the Plan/Policy clearly indicates in the "INCONTESTABILITY" Provision in "SECTION 21- GENERAL POLICY PROVISIONS" that while the validity of the policy may not be contested after two years, "[h]owever, AUL is not precluded from asserting at any time any defenses based upon provisions in the policy relating to eligibility for coverage."

109.   Eligibility under the Policy of AUL/American United Life Insurance Company in "SECTION 1 -ELIGBILITY FOR BENEFITS" has a "FULL-TIME EMPLOYEE REQUIREMENT" of the employee working at least 30 hours.

110.   Defendant AUL, denied coverage of the Life Insurance claim of Shelia Griffin for her deceased husband Vernon's coverage via correspondence dated March 31, 2022 based on the requirement she work 30 hours or more per

week and was related, in part, to Defendant AUL's mistaken notion, which it is believed was put forth by the Employer, that her hours were "reduced" under 30 hours because of Covid-19 implying she was eligible at the time of enrollment.

111.   Plaintiff never had worked 30 hours of time a week as she had "retired" at the time of enrollment, was working at the time of enrollment 30 hours a week or less, and Covid-19 had not manifested itself and did not play a role in her part time status.

112.   Defendant Sanders Saw and Blades, by and through the actions of its agents and representatives, including but not limited to Plant Manager Cammerota, acted in violation of the "prudent man" standard by the conducted alleged in this Complaint.

113.   Plaintiff alleges that the conduct in the case was done intentionally, recklessly, and with the intent to push her to enroll.

114.   Defendant Sanders Saw and Blades, Inc., has engaged in conduct subsequent to Plaintiff making a claim for coverage under the Plan designed to deceive Defendant AUL and Plaintiff and shift blame, including informing Defendant AUL that Plaintiff's reduction in hours was caused by Covid-19 which is not true.

115.   Plaintiff seeks all possible remedies under ERISA, including payment of the amount of Life Coverage on her now deceased husband, attorneys' fees,

costs, statutory interest, injunctive relief, mandamus, surcharge, and "make whole relief."

116.   Alternatively, no ERISA plan exists as represented by Defendant Sanders Saws and Blades, Inc.

117.   Plaintiff also brings this action against Defendant Sanders Saws and Blades, Inc. and Defendant Cammerota under various state law theories of recovery both statutory and under the common law.

118.   At all times Defendant Cammerota was acting within the scope of his employment and in his capacity as Plant Manager.  Alternatively, assuming he acted within the scope of his employment, his conduct has been ratified by his and Defendant Sanders Saw and Blades, Inc.'s subsequent conduct.

## COUNT I

## BREACH OF CONTRACT

## PLAINTIFF SHELIA GRIFFIN
v.
## DEFENDANT AUL

119.   Plaintiff incorporates all paragraphs above as if more fully set forth herein.

120.   Plaintiff contracted with Defendant AUL or was the third party beneficiary of a contract between Defendant Sanders Saws and Blades, Inc. and Defendant AUL.

121.   The contract required the payment of life insurance coverage on the death of Plaintiff's husband, Vernon Griffin, to Plaintiff.

122.   Vernon Griffin passed.

123.   Plaintiff as the beneficiary of said policy apprised Defendant AUL of her claim.

124.   Defendant AUL denied Plaintiff's claim and returned Plaintiff's premium.

125.   The two-year incontestability had passed under Pennsylvania law.

126.   Defendant AUL by operation of Pennsylvania law could not contest this claim based on the provision in the Policy requiring 30 hours of work a week.

127.   Defendant AUL is in breach of contract.

128.    Plaintiff has suffered damages for failure to pay her the death benefit/coverage on Vernon Griffin, including non-payment of the coverage amount.

WHEREFORE, Defendant AUL is liable to pay Plaintiff the policy proceeds of AUL Policy number G 2535(T) B and the Participating Unit Number is G 00619052-000-000, which Plaintiff believes is $25,000 but which will be disclosed during discovery; interests; and costs.

## COUNT II

### INSURANCE BAD FAITH
### UNDER 42 Pa.C.S. section 8371

### PLAINTIFF SHELIA GRIFFIN
### v.
### DEFENDANT AUL

129.    Plaintiff incorporates all paragraphs above as if more fully set forth herein.

130.    Plaintiff contracted with or was the third party beneficiary of a contract with AUL.

131.    Defendant AUL was apprised of her insurance claim on her dead husband's policy.

132.    Defendant denied her claim in bad faith.

133.    Defendant AUL is required to comply with the two-year incontestability under Pennsylvania insurance law.

134.    Defendant AUL markets to small employers and has created confusion as to the application of ERISA or non-application of ERISA to the determinant of ultimate beneficiaries of insurance.

135.    This conduct was done in bad faith.

136.    Under section 8371, Plaintiff may be awarded for violation of this Section the following: (1) interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.; (2) punitive damages against the insurer; and (3) court costs and attorney fees against the insurer.

137.    Plaintiff has suffered damages and is entitled to the relief the law affords, including punitive damages.

WHEREFORE, Defendant AUL is liable to Plaintiff for its bad faith conduct under section 8371 and may be assessed by the court for violation of this Section the following: (1) interest on the amount of the claim from the date the claim was punitive damages against the insurer;  and (3) court costs and attorney fees against the insurer.

## COUNT III

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

### PLAINTIFF SHELIA GRIFFIN
v.
### DEFENDANT AUL

138.   Plaintiff incorporates the foregoing allegations as if set forth herein at length.

139.   Defendant AUL has breached their covenant of good faith and fair dealing with Plaintiff.

140.   Plaintiff has incurred damages as a result of Defendant's breach of the covenant of good faith and fair dealing.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor (1) enjoining Defendant from further breach of the covenant of good faith and fair dealing; and (2) award damages in an amount in excess of $50,000.00, together with costs, and such other relief as the Court deems just and proper.

# COUNT IV

# FRAUD

## PLAINTIFF SHELIA GRIFFIN
### v.
## DEFENDANT AUL

141.    Plaintiff incorporates the foregoing allegations as if set forth herein at length.

142.    Defendant AUL and/or is agents or representatives have made false statements of fact, including that part-time employees could collect under the policy, that this was a Non-ERISA policy, and/or Covid-19 reduced Claimant's hours causing her to be ineligible.

143.    Plaintiff is entitled to punitive damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor (1) enjoining Defendant from further fraudulent conduct; and (2) awarding compensatory and punitive damages in an amount in excess of $50,000.00, together with costs, statutory interest and such other relief as the Court deems just and proper.

## COUNT V

## VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

### PLAINTIFF SHELIA GRIFFIN
### v.
### DEFENDANT AUL

144.    Plaintiff incorporates the foregoing allegations as if set forth herein at length.

145.    Defendant AUL by its marketing, enrollment material and documents provided to her or her employer, or by and through tis agents and representatives, has engaged in fraudulent or deceptive conduct which created a likelihood of confusion or of misunderstanding.

146.    Pursuant to Section 201-9.2 of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (the "Act"), Plaintiff has purchased goods or services from Defendant primarily for personal, family and household use, and have suffered ascertainable loss of money or property as a result of Defendant's violation of the Act.

147.    Plaintiff is entitled to recover actual damages or one hundred dollars, whichever is greater, as well as treble damages, costs and reasonable attorneys' fees.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor (1) enjoining Defendant from further violation of the Act; and (2) awarding compensatory, punitive, statutory and treble damages in an amount in excess of $50,000.00, together with costs, attorneys' fees, statutory interest and such other relief as the Court deems just and proper.

## COUNT VI

## VIOLATION OF ERISA

## PLAINTIFF SHELIA GRIFFIN
### v.
## DEFENDANT SANDERS SAWS AND BLADES, INC.

148.    Plaintiff incorporates the foregoing paragraphs as if set forth herein.

149.    The above referenced Life Insurance Coverage is an ERISA Plan.

150.    Plaintiff and/or her now deceased husband enrolled in the Plan based on the activity of the managers, representatives, officials, and employees of Sanders Saws and Blades, Inc.'s in this Complaint.

151.    Defendant Sanders Saws and Blades never had an ERISA plan that pertained to this Life Insurance coverage.

152.    Defendant Sanders Saws and Blades provided false or misleading information to Plaintiff and/or AUL by fraud, negligence or mistake.

153.   Defendant Sanders Saws and Blades did not act in accordance with the prudent man standard and violated section 502(a)(3), 29 U.S.C. section 1132(a)(3).

154.   Defendant Sanders Saws and Blades breached its fiduciary duty under ERISA Section 502(a)(3), 29 U.S.C. section 1132(a)(3)

155.   Plaintiff suffered damages.

156.   Plaintiff seeks all possible remedies under ERISA, including payment of the amount of Life Coverage on her now deceased husband, attorneys' fees, costs, statutory interest, injunctive relief, mandamus, surcharge, and "make whole relief."

WHEREFORE, Plaintiff brings this action seeking equitable relief under federal law, ERISA, and seeks the following relief in an amount lower than $150,000: (1) payment of the amount of Life Coverage on her now deceased husband, (2) attorneys' fees, (3) costs, (4) statutory interest, (5) injunctive relief, (6) mandamus, (7) surcharge, and (8) "make whole relief."

## COUNT VII

## BREACH OF CONTRACT

### PLAINTIFF SHELIA GRIFFIN
v.
### DEFENDANT SANDERS SAWS AND BLADES, INC.

157.   Plaintiff incorporates all paragraphs above as if more fully set forth herein

158.   This Count alternatively asserts the Life coverage was not an ERISA Plan.

159.   Plaintiff agreed to purchase life insurance as part of a company offering as part of her fringe benefits.

160.   The agreement required the payment of life insurance coverage on the death of Plaintiff's husband, Vernon Griffin, to Plaintiff;

161.   Vernon Griffin passed;

162.   Plaintiff as the beneficiary of said policy apprised Defendant AUL of her claim;

163.   Defendant Sanders Saws and Blades, Inc. had failed to secure insurance for Plaintiff even though she paid premium through payroll deductions.

164.   Defendant is in breach of contract.

165.   Plaintiff has suffered damages for failure to pay her the death benefit/coverage on Vernon Griffin, including non-payment of the coverage amount.

WHEREFORE, Defendant is liable to pay Plaintiff the amount she would have received from policy proceeds of AUL Policy number is G 2535(T) B and the Participating Unit Number is G 00619052-000-000, which Plaintiff believes is $25,000 but which will be disclosed during discovery; interest; and costs.

## COUNT VIII

## VIOLATION OF PENNSYLVANIA'S WAGE PAYMENT AND COLLECTION LAW

### PLAINTIFF SHELIA GRIFFIN
v.
### DEFENDANT SANDERS SAWS AND BLADES, INC.

166.    Plaintiff incorporates all paragraphs above as if more fully set forth herein.

167.   This Count alternatively asserts the Life coverage was not an ERISA Plan.

168.   Defendant Sanders Saws and Blades, Inc. agreed to secure coverage for Plaintiff as part of her employment.

169.    Under Pennsylvania's Wage Payment and Collection Law, 43 Pa C. S. §260.1. ("WPCL"), the term wages is broadly defined and includes fringe

benefits or wage supplements, including but not limited to the provision of agreed upon life insurance coverage.

170.    Defendant Sanders Saws and Blades, Inc. took money out of Plaintiff's pay check to secure that coverage.

171.    The Life insurance coverage in this case is a "fringe benefit or wage supplement" under Section 2.1 subject to payment by Plaintiff's Employer, Defendant Sanders Saws and Blades, Inc., Plaintiff has fulfilled all prerequisites to receiving her fringe benefit.

172.    Defendant has violated the WPCL by failing to pay Plaintiff as required.

173.    Defendant is liable to pay unpaid fringe benefits, 25% liquidated damages, and Plaintiff's attorneys fees under the WPCL.

WHEREFORE, Plaintiff seeks against Defendant (1) the payment of the amount of Life Coverage on her now deceased husband, (2) 25% liquidated damages; (3) attorneys' fees, (4) costs, and (5) statutory interest.

## COUNT IX

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

### PLAINTIFF SHELIA GRIFFIN
v.
### DEFENDANT SANDERS SAWS AND BLADES, INC.

174.   Plaintiff incorporates the foregoing allegations as if set forth herein at length.

175.   This Count alternatively asserts the Life coverage was not an ERISA Plan.

176.   Defendant Sanders Saws and Blades, Inc. has breached their covenant of good faith and fair dealing with Plaintiff.

177.   Plaintiff has incurred damages as a result of Defendants' breach of the covenant of good faith and fair dealing.

WHEREFORE, Defendant is liable to pay Plaintiff the amount she would have received from policy proceeds of AUL Policy number is G 2535(T) B and the Participating Unit Number is G 00619052-000-000, which Plaintiff believes is $25,000 but which will be disclosed during discovery; punitive damages, interest; and costs.

## COUNT X

## FRAUD

### PLAINTIFF SHELIA GRIFFIN
v.
### DEFENDANT SANDERS SAWS AND BLADES, INC.

178.   Plaintiff incorporates the foregoing allegations as if set forth herein at length.

179.   This Count alternatively asserts the Life coverage was not an ERISA Plan.

180.   Defendant Sanders Saws and Blades, Inc. has made false statements of fact to Plaintiff and Defendant AUL to induce her to enroll in Life Insurance coverage for which she was not eligible, including that part-time employees could collect under the policy, that this was a Non-ERISA policy, and/or Covid-19 reduced Claimant's hours causing her to be ineligible.

181.   Defendant and/or its representatives have committed fraudulently misrepresentations to Plaintiff inducing her to purchase coverage.

182.   Plaintiff is entitled to compensatory and punitive damages against Defendant.

WHEREFORE, Defendant is liable to pay Plaintiff the amount she would have received from policy proceeds of AUL Policy number is G 2535(T) B and the Participating Unit Number is G 00619052-000-000, which Plaintiff believes is $25,000 but which will be disclosed during discovery; punitive damages, interest; and costs.

## COUNT XI

## NEGILGENT MISPREPRESENTION

**PLAINTIFF SHELIA GRIFFIN**
**v.**
**DEFENDANT SANDERS SAWS AND BLADES, INC.**

183.   Plaintiff incorporates the foregoing allegations as if set forth herein at length.

184.   This Count alternatively asserts the Life coverage was not an ERISA Plan.

185.   Defendant Sanders Saws and Blades, Inc. has made false statements of fact to Plaintiff and Defendant AUL to induce her to enroll in Life Insurance coverage for which she was not eligible, including that part-time employees could collect under the policy, that this was a Non-ERISA policy, and/or Covid-19 reduced Claimant's hours causing her to be ineligible.

186.   Defendant and/or its representatives have committed negligent misrepresentations to Plaintiff inducing her to purchase coverage.

WHEREFORE, Defendant is liable to pay Plaintiff the amount she would have received from policy proceeds of AUL Policy number is G 2535(T) B and the Participating Unit Number is G 00619052-000-000, which Plaintiff believes is $25,000 but which will be disclosed during discovery; punitive damages, interest; and costs.

## COUNT XII

## ESTOPPEL

### PLAINTIFF SHELIA GRIFFIN
### v.
### DEFENDANT SANDERS SAWS AND BLADES, INC.

187.   Plaintiff incorporates the foregoing allegations as if set forth herein at length.

188.   This Count alternatively asserts the Life coverage was not an ERISA Plan.

189.   Defendant Sanders Saws and Blades, Inc., by and through its representative Defendant Cammerota, made representation(s) Plaintiff was entitled to rely on.

190.   Plaintiff did rely on the representations to her detriment.

191. Plaintiff is entitled to compensatory and punitive damages.

WHEREFORE, Defendant is liable to pay Plaintiff the amount she would have received from policy proceeds of AUL Policy number is G 2535(T) B and the Participating Unit Number is G 00619052-000-000, which Plaintiff believes is $25,000 but which will be disclosed during discovery; punitive damages, interest; and costs.

## COUNT XIII

## FRAUD

### PLAINTIFF SHELIA GRIFFIN
### v.
### DEFENDANT JOSEPH CAMMEROTA

192. Plaintiff incorporates the foregoing allegations as if set forth herein at length.

193. Defendant Joseph Cammerota has made false statements of fact to Plaintiff to induce her to enroll in Life Insurance coverage for which she was not eligible, including that part-time employees could collect under the policy, that this was a Non-ERISA policy, and/or Covid-19 reduced Claimant's hours causing her to be ineligible.

194.    Defendant Joseph Cammerota has made false statements of fact to Defendant AUL to enable Plaintiff to enroll in Life Insurance coverage for which she was not eligible.

195.    Defendant engaged in subsequent misrepresentations and deceptions to both Plaintiff and Defendant AUL after she applied for coverage.

196.    Defendant has committed fraud against Plaintiff inducing her to purchase coverage.

197.    Plaintiff is entitled to compensatory and punitive damages as against Defendant.

WHEREFORE, Defendant is liable to pay Plaintiff the amount she would have received from policy proceeds of AUL Policy number is G 2535(T) B and the Participating Unit Number is G 00619052-000-000, which Plaintiff believes is $25,000 but which will be disclosed during discovery; punitive damages, interest; and costs.

## COUNT XIV

## NEGILGENT MISPREPRESENTION

### PLAINTIFF SHELIA GRIFFIN
v.
### DEFENDANT JOSEPH CAMMEROTA

198.   Plaintiff incorporates the foregoing allegations as if set forth herein at length.

199.   This Count alternatively asserts the Life coverage was not an ERISA Plan.

200.   Defendant Cammerota negligently made misrepresentations to induce Plaintiff to enroll in Life Insurance coverage for which she was not eligible.

201.   Defendant Joseph Cammerota has made false statements of fact to Defendant AUL to enable Plaintiff to enroll in Life Insurance coverage for which she was not eligible.

202.   Defendant Cammerota engaged in subsequent misrepresentations and deceptions to both Plaintiff and Defendant AUL after she applied for coverage.

203.   Plaintiff is entitled to compensatory and punitive damages as against Defendant.

WHEREFORE, Defendant is liable to pay Plaintiff the amount she would have received from policy proceeds of AUL Policy number is G 2535(T) B and the Participating Unit Number is G 00619052-000-000, which Plaintiff believes is $25,000 but which will be disclosed during discovery; punitive damages, interest; and costs.

## COUNT XV

## ESTOPPEL

## PLAINTIFF SHELIA GRIFFIN
### v.
## DEFENDANT JOSEPH CAMMEROTA

204.    Plaintiff incorporates the foregoing allegations as if set forth herein at length.

205.    This Count alternatively asserts the Life coverage was not an ERISA Plan.

206.    Defendant Sanders Saws and Blades, Inc., by and through its representative Defendant Cammerota, made representation(s) Plaintiff was entitled to rely on.

207.    Plaintiff did rely on the representations to her detriment.

208.    Plaintiff is entitled to compensatory and punitive damages.

WHEREFORE, Defendant Cammerota is liable to pay Plaintiff the amount she would have received from policy proceeds of AUL Policy number is G 2535(T) B and the Participating Unit Number is G 00619052-000-000, which Plaintiff believes is $25,000 but which will be disclosed during discovery; punitive damages, interest; and costs.

Date: June 6, 2023                 BY:  *Edward C. Sweeney*
                                        Edward C. Sweeney
                                        Signature code: ECS1942
                                        Attorney for Plaintiff
                                        Wusinich, Sweeney & Ryan, LLC
                                        102 Pickering Way, Suite 403
                                        Exton, PA  19341
                                        (610) 594-1600
                                        esweeney@wusinichsweeney.com